UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MICHAEL TROY WATSON, | ) | CASE NO. 1:07 CV 3745 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| ELLEN MANDEL, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On December 7, 2007, pro se plaintiff Michael Troy Watson filed the above-captioned action under Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. §§ 1981, 1985 against Cuyahoga County Bar Association General Counsel Ellen Mandel, Cuyahoga County Bar Association Representative Jacob Kronenberg, the Cuyahoga County Bar Association, "John Doe Members of the Jewish Legal Community to Date Unidentified Secret Society with the Cuyahoga County Bar Association," Ohio Supreme Court Chief Justice Thomas J. Moyer, Ohio Supreme Court Disciplinary Counsel Jonathan Coughlan, Ohio Supreme Court First Assistant Disciplinary Counsel Lori Brown, the Office of Disciplinary Counsel, "Board of Commissioners on Grievances and Discipline to Date an Unidentified Secret Society within the the [sic] Board of Commissioners," and "Unidentified Members of the Jewish Legal Community and/or Affiliates with the Jewish Legal Community Known to the Defendants Jointly and/or Severally c/o the Office of Disciplinary Counsel." (Compl. at 1-2.) He filed an amended complaint against these

defendants on December 17, 2007 asserting claims under Title VII, 42 U.S.C. § 2000e, 42 U.S.C. §§ 1332, 1343, 1981, 1983, 1985, and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.A. § 1961. Mr. Watson also includes claims which arise under the laws of the State of Ohio. In the amended complaint, plaintiff alleges that he has been unfairly deprived of his license to practice law. He seeks monetary damages and restoration of his law license.

Mr. Watson also filed an Application to Proceed <u>In Forma Pauperis</u>. That Application is granted.

## Background

Mr. Watson was licensed to practice law in the State of Ohio in 1983. On May 16, 2000, a disciplinary action was initiated against Mr. Watson charging him with violating two counts of the Code of Professional Responsibility. The matter was referred to the Board of Commissioners of Grievances and Discipline of the Ohio Supreme Court. ("the Board") The charges in Count One were dismissed without prejudice. (See Am. Compl. Ex. E.) With respect to Count II of the complaint, the Board found that Mr. Watson violated several disciplinary rules during the course of his representation of Ms. Price-Burns in a domestic relations matter. The Board concluded that Mr. Watson entered into a contingent fee agreement which he failed to disclose to the court, subsequently tried to collect a fee based on an hourly rate, threatened his client with criminal prosecution if she did not pay the hourly fee, filed an attorney's lien on her property without first obtaining a judgment awarding him the debt, failed to appear at a hearing on a Motion he filed on behalf of the client, and surreptitiously recorded conversations with Ms. Price-Burns's son and her son's attorney. Noting that Mr. Watson failed to accept responsibility for his conduct, the Ohio Supreme Court suspended Mr. Watson's license to practice law for a period of one year.

On February 21, 2002, Mr. Watson was once again charged by the Disciplinary Counsel with various violations of the Code of Professional Responsibility. The Board noted that Mr. Watson had agreed to help a client obtain victim's reparations after an assault. He filed the necessary paperwork on behalf of the client and then failed to answer numerous requests by the State of Ohio to authorize release of the client's medical records. Victim's compensation was denied because the client had not supplied documentation to prove financial loss. The Board also found that he sought to be compensated for an excessive amount of fees and that he was practicing law in a manner that suggested he was a partner in a law firm rather than a sole practitioner. Due to Mr. Watson's repeated refusal to cooperate with the investigation which necessitated the filing of a Motion to Compel Compliance, the Supreme Court suspended Mr. Watson from the practice of law for two years, with one year stayed on the condition that he commit no further misconduct. The second suspension was to be served consecutively to the first suspension.

Mr. Watson was charged with additional professional misconduct on March 24, 2004. The thirteen count complaint alleged multiple violations in the course of the representation of eight clients. "The Board found that the prior cases, together with the numerous disciplinary violations proved [in this matter], established a pattern of misconduct, multiple offenses, and recidivism of a dimension rarely seen." Disciplinary Counsel v. Watson, 107 Ohio St. 3d 182, 189 (2005) The Supreme Court agreed with this description of Mr. Watson's conduct stating:

> The evidence in this case is overwhelmingly clear and convincing. Respondent repeatedly neglected his clients' interests. He repeatedly misrepresented events or lied to his clients and others, including relator and the board. He repeatedly failed to do what his clients asked of him. He repeated took his clients' money, did nothing for it, and neither accounted for the funds nor returned the unearned portions. He repeatedly failed to return his clients' files on request. Respondent furthermore did not cooperate in the

disciplinary process and has not made restitution.

Id. at 190. The Court further found that Mr. Watson had continued to practice law in complete disregard of the two previous suspensions and permanently disbarred him from the practice of law on December 7, 2005.

Mr. Watson has subsequently been found in contempt of court for failing to abide by the disbarment order. He was charged with representing a supermarket in the collection of bad checks by purchasing the checks at a marginal price, and agreeing to return a portion of the proceeds if he was able to collect the debt in a legal action filed pro se. He also participated in a foreclosure action filed against Ida Oliver. The charges pertaining to his action in the supermarket case were dismissed when a witness recanted his testimony. The foreclosure matter was pursued. He was sentenced on May 10, 2007 to 90 days in jail and fined $10,000.00. The jail time and all but $500 of the sentence was suspended on certain conditions. He was again found in contempt of June 26, 2007 for failing to pay the $ 500.00. The matter was referred to the Ohio Attorney General.

The extent of Mr. Watson's legal problems went beyond his professional disciplinary proceedings. Mr. Watson was arrested in Cleveland Heights, Ohio and charged with domestic violence in October 2003. Mr. Watson and his eighteen year old daughter were arguing and the altercation became physical. Mr. Watson struck his daughter, bruising her eye which swelled shut from the injury. Mr. Watson broke two bones in his hand. He was found guilty at the conclusion of a bench trial and sentenced to six months in jail, suspended, and a $ 1,000 fine, of which all but $ 250.00 was suspended. He appealed his conviction, which was upheld on July 14, 2005.

Mr. Watson was also involved in a traffic matter stemming from a speeding violation

in Cleveland Heights in 2006.  In court, Mr. Watson was asked if he would like counsel appointed for him.  He initially made the request and a public defender was called into court.  The attorney, Mr. Berman, arrived but refused to represent Mr. Watson, stating, "No, I will not assist him at all. I don't assist people that hate me and say bad things about me. ...He can find somebody else...I'm not going to represent him." (Am. Compl. Ex. M.).  Mr. Watson represented himself in court.  The charges were dismissed for want of prosecution.

Mr. Watson now challenges these legal proceedings.  In his thirteen count complaint, Mr. Watson contends that the defendants violated Title VII, 42 U.S.C. § 1981, 1983, 1985, and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.A. § 1961.  Specifically, he contends that by giving him a license to practice law, the State became his employer, and by prosecuting him for numerous ethical violations and subsequently disbarring him, it created a hostile work environment.  He contends that as an African American and a "Student of Islam," he is a member of a protected class and therefore entitled to the protection of Title VII.  (Am. Compl. at 5.)  He further claims he was deprived of his property (his law license) without due process of law and was denied equal protection as "the Disciplinary Counsel et al. was in violation of its own rules and/or otherwise exhibited the bias and determination to act on behalf of the Jewish Legal Community and/or those affiliated therewith." (Am. Compl. at 14.)  He alleges that the defendant made false statements about him during the disbarment proceedings and interfered with his ability to practice law.  With reference to the domestic violence conviction, Mr. Watson alleges that the arresting officer presented false testimony.  He further alleges with reference to the traffic matter that the public defender accused him of being anti-Semitic.  He then claims that the defendant violated RICO by jointly and severally representing "an organized and criminal involvement amongst

5

themselves in support of the Jewish Legal Community and/or their affiliate and against the plaintiff a student of Islam." (Am. Compl. at 19.) Mr. Watson seeks an award of $1,000,000.00 in compensatory damages, $1,000,000.00 in punitive damages, reinstatement of his law license, and correction of all records to reflect the reinstatement.

## **Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Coles v. Granville, 448 F.3d 853, 857-59 (6th Cir. 2006). Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

In the present action, Mr. Watson's allegations directly attack the state courts' decisions to disbar him from the practice of law, and to convict him of domestic violence. All of

the allegations in these causes of action concern specific grievances that the law was incorrectly applied to plaintiff's cases, that the individuals participating the presentation of the State's cases presented false testimony, and the trier of fact arrived at the wrong conclusion. The substance of his entire complaint is clearly predicated on Mr. Watson's belief that the state courts were mistaken in rendering their decisions against him. Moreover, he requests as relief that the state judgments be reversed and their execution enjoined. Any review of the federal claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against Mr. Watson. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

    /s/Dan Aaron Polster 12/21/07
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.